RECEIVED
IN LAKE CHARLES, LA
FEB 15 2011
PAm
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BATON ROUGE DIVISION

| | | |
|---|---|---|
| **MAPP CONSTRUCTION LLC** | : | **DOCKET NO. 3:09-625** |
| VS. | : | **JUDGE TRIMBLE** |
| **PARAGON STEEL SERVICES, INC AND AUTO-OWNERS INSURANCE COMPANY** | : | **MAGISTRATE JUDGE KIRK** |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #13) filed by defendant, Auto-Owners Insurance Company, wherein the mover seeks to dismiss all claims against it, with prejudice and at plaintiff's costs. Plaintiff, MAPP Construction LLC ("MAPP") and co-defendant, Paragon Steel Services, Inc. ("Paragon") both oppose the motion.

## FACTUAL STATEMENT

On December 26, 2007, plaintiff, MAPP, a general contractor, entered into a Subcontract Agreement with defendant, Paragon, to construct a metal building at the Normandy Square Mall in Lafayette, Louisiana. Prior to completion and acceptance by the owner, the owner and MAPP noted workmanship deficiencies in Paragon's work, specifically, the roof of the structure. These deficiencies resulted in leaking.

After being informed of the defects, Paragon attempted to make repairs. When Paragon's repairs proved to be unsuccessful, it made no further attempts to repair the roof. Consequently, Normandy Square Mall and MAPP contracted with L&L Erectors, Inc. ("L&L") to make the necessary repairs.

MAPP's total damage claims for the defects are as follows:

1. Subcontractor costs while attempting to patch the roof.
2. Subcontractor costs to replace the roof panels.
3. Equipment costs to unload the roof panels.
4. Cost of metal roof panels purchased from Nucor Building Systems.
5. Cost for additional prints sent to Denson Engineers, Inc.
6. Project supervision costs.
7. Additional insurance cost incurred for extending the project duration.
8. Contractor's fee paid to MAPP.[1]

There was no damage to any other sections of the building due to Paragon's workmanship. L&L completed the necessary repairs to remedy the workmanship defects and no further reports of leaks from the roof were made.

Defendant, Auto-Owners Insurance Company ("Auto-Owners") issued a Commercial General Liability policy to Paragon for the relevant time period; the policy contains certain coverages and exclusions which are the subject of the instant motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[3] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving

---

[1] Auto-Owner's exhibit D.

[2] Fed. R.Civ. P. 56(c).

[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

2

party.[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[5] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]

A court should grant an insurer's motion for summary judgment when the facts are taken into account and clearly show that the provisions of the insurance policy do not afford coverage.[10]

## **LAW AND ANALYSIS**

Auto-Owners maintains that the policy does not afford coverage under the facts alleged because of a "work product exclusion." Auto-Owners relies on the following policy provisions:

1. **Insuring Agreement**

---

[4] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[5] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[6] Anderson, 477 U.S. at 249.

[7] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[8] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[9] Anderson, 477 U.S. at 249-50.

[10] Supreme Srvcs. and Specialty Co. Inc. v. Sonny Greer, Inc., 958 So.2d 634, 638.

3

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies. . . .

\* \* \*

**2. Exclusions**

This insurance does not apply to: . . .

\* \* \*

**j. Damage To Property**

"Property damage" to:

\* \* \*

(6) That particular piece of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

**k. Damage to your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damages To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the products-completed operations hazard".

**m. Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.[11]

**SECTION VI - DEFINITIONS**

\* \* \*

9. " Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreements.

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreements.[12]

Auto-Owners cites Mobile Imaging, Inc. v. FIX,[13] to support its position that the work product exclusion eliminates coverage for the cost of repairing or replacing the insured's own defective work or defective product and the consequential damages arising therefrom.[14] Auto-

---

[11] Auto-Owners exhibit A, Policy #034617-38367620-07, R. #13-4, p.29-34 of 67.

[12] Auto-Owner's exhibit A, R. #13-4, p. 45 of 67.

[13] 980 So.2d 240, 242 (La.App. 3rd Cir. 2008).

[14] Citing Hallar Enterprises, Inc. v. Hartman, 583 So.2d 883, 890 (La.App. 1st Cir. 1991).

5

Owners acknowledges that coverage is triggered if the defect causes property damage within the policy term.[15] However, it argues that damage to the insured's [Paragon's] own work product is specifically excluded as an occurrence under the work product exclusion.

Auto-Owners contends that there is nothing in the pleadings to suggest that MAPP sustained any damage to the property other than the needed repairs to the roof itself. Auto-Owners remarks that MAPP's expert report identified only damage to the work of Paragon and workmanship errors causing that damage.[16] In other words, the report identifies only damage to Paragon's own work. Accordingly, Auto-Owners submits that the damages complained of by MAPP in its complaint are not afforded coverage under the Auto-Owners insurance policy because such damages are confined to Paragon's work or product.

MAPP maintains that there was damage to other property for which the insurance policy does provide coverage citing Bollinger Shipyards Lockport, L.L.C. v. AMClyde Engineered Products, Inc.,[17] MAPP asserts that during the deposition of MAPP's corporate representative, Nathan Fellows identified damage to insulation that was not installed as part of Paragon's scope of work. Thus, MAPP argues that there is damage to other property for which the policy does not exclude. The court notes that while MAPP makes this argument and states this alleged fact in their memorandum brief, they submit no summary judgment evidence for this court to consider. In order to defeat a summary judgment motion, a party must submit an affidavit or other admissible evidence to create a genuine

---

[15] Oxner v. Montgomery, 794 So.2d 86, 91 (La.App. 2nd Cir. 2001).

[16] Auto-Owners exhibit C, Kelcey Grote Report, R. #13-6.

[17] 2003 WL 21396773, *6 (E.D. La. 2003).

6

issue of material fact.[18]

Co-defendant, Paragon also cites <u>Bollinger Shipyards, supra</u> to support its claim that there is coverage under the Auto-Owner policy for damage to other property, specifically the damage to the insulation.[19] Paragon submits as summary judgment evidence excerpts from the deposition testimony of MAPP corporate representative, Nathan Fellows who testified that he believed there was some damage to insulation due to the roof leaks and that he believed that L&L patched the roof insulation.[20]

Paragon also refers to discovery responses[21] wherein additional insurance premiums were required. Mr. Fellows testified that there was an eight (8) month period of time from the first discovered roof leak until L&L completed the repairs to the roof.[22] Thus, Paragon argues that these additional insurance premiums should be covered under the policy.

Auto-Owners rebuts, arguing that L&L's invoice contained line-item charges, none of which would be a covered "consequential damage" under its policy. It is undisputed that L&L made all of the necessary repairs. Notably, none of the parties dispute the fact that the policy excludes coverage for work product. Work-product exclusions in a general liability policy do not insure any obligation of the policyholder to repair or replace his own defective work or defective product.[23] Further,

---

[18] <u>Anderson</u>, 477 U.S. at 249; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

[19] Paragon memorandum, p. 2.

[20] Paragon exhibit A, Nathan Fellows depo., p.63.

[21] R. #13-7, p. 8.

[22] Paragon exhibit A, Fellows depo, pp. 76-77.

[23] <u>Thorn v. Caskey</u>, 745 So.2d 653, 665 (La.App. 2d Cir. 1991).

"Louisiana jurisprudence has consistently recognized that liability policies are not performance bonds."[24] The only issue is whether there is a genuine issue of fact for trial as to damages to other property.

Auto-Owners maintains that neither MAPP, nor Paragon have submitted any summary judgment evidence of the charges incurred for the alleged repair to the insulation. Auto-Owners argues that even though Mr. Fellows testified that he "believed" that the insulation needed to be patched, and that L&L performed the work, his deposition does not provide certainty that such work was performed by L&L. Auto-Owners submits that there is a complete lack of evidence such as correspondence, work orders, invoices and/or communications to support MAPP and Paragon's assertion that there was damages other than to the work product itself. Specifically, Auto-Owners remarks that the invoice from L&L contained no line-item repairs costs for insulation repair. In further support of its position, Auto-Owners submits MAPP's responses to Interrogatory No. 6 propounded by Paragon:

> Describe the nature and extent of the repairs that you believe are necessary to correct the damage for which you contend Paragon is liable, including the actual or estimated cost of those repairs, itemizing line-by-line all materials and labor that have been or will be required to complete such repairs, and identify all documents that you are relying on for your response.
>
> **<u>ANSWER TO INTERROGATORY NO. 6:</u>**
>
> The following repairs were necessary to correct the damage to the structure identified in response to Interrogatory No. 1: complete replacement of the parapet cap, parapet wall metal, and the first transitory row of metal roof panels including all associated and necessary roof transitions and flashings.
>
> L&L Erectors, Inc. located at 29233 Raymond Hwy, Elton, Louisiana, 70532, has performed the above-mentioned corrective measures. The materials required for

---

[24] Id.

these repairs were supplied by Nucor Building Systems. The total amount claimed for damages is $111,538.00 which includes the following:

$11,300.00 Subcontractor costs while attempting to patch roof
$4,503.00 Additional insurance costs incurred for extending the project duration
$4,527.89 Project supervision costs
$ 28.69 Costs for additional prints sent to Denson Engineers, Inc.
$15,046.44 Costs of the metal roof panels purchased from Nucor Building Systems
$ 575.48 Equipment costs to unload the roof panels
$65,416.68 Subcontractor costs to replace the roof panels

**Subtotal:** $101,398.18
**Contractor's Fee (10%):** $10,139.18
**Total:** $111,538.00[25]

What is noticeably absent from this repair list is any repairs for damages to other property, specifically the insulation. Auto-Owners is correct in that there has been no summary judgment evidence submitted to substantiate MAPP's assertion that it incurred expenses for damages to other property. MAPP and Paragon have failed to submit any evidence of these damages or their costs to create a genuine issue of material fact for trial. Mr. Fellows testimony regarding his belief that there was damage to insulation without evidence of the cost to repair and/or to establish that the repairs were made is insufficient to defeat the summary judgment motion.

Auto-Owners argues that the additional costs for insurance premiums is not covered under the policy because MAPP and Paragon have submitted no evidence of damage to other property. MAPP argues that these expenses are consequential damages. However, jurisprudence has interpreted work product exclusions to also exclude consequential damages directly resulting from the defective workmanship.[26] The summary evidence establishes that insurance premiums were paid

---

[25] Auto-Owners exhibit D, p. 8, R. #13-7.

[26] Gaylord Chemical Corp. v. ProPump, Inc., 753 So.2d 349, 355 (La.App. 1 Cir. 1/18/00).

9

for "extending the project duration." However, there has been no evidence submitted to establish that these additional insurance premiums were a result of repairs to other property; the evidence indicates that the premiums were paid to extend the project because of the repairs that were made to the roof – or the work product itself. Accordingly, the work product exclusion exception would eliminate coverage that would otherwise be provided under the policy.

MAPP maintains that there is a genuine issue of fact as to the applicability of the Products Completed Operations Hazard Endorsement that would preclude summary judgment. MAPP remarks in its opposition brief that "at the time of discovery of Paragon's defective work, the Project was substantially complete."[27] Again, MAPP has failed to submit any summary judgment evidence to create a genuine issue of material fact. Arguments without evidence are insufficient to defeat a motion for summary judgment.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted dismissing with prejudice the claims of Mapp Construction, LLC against defendant, Auto-Owners Insurance Company. The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 15th day of February, 2011.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[27] R. #14, p. 7.